# IN THE COURT OF APPEALS OF IOWA

No. 18-0804
Filed July 18, 2018

**IN THE INTEREST OF S.H.,**
**Minor Child,**

**K.K., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Franklin County, Peter B. Newell, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED**.

Larry W. Johnson of Walters & Johnson, Iowa Falls, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, P.L.C., Clarion, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

A mother appeals the termination of her parental rights. We find the mother waived her reasonable-efforts claim, the court was not required to halt the termination proceedings to determine the mother's competency, and the court properly denied her request for a six-month extension prior to termination. We affirm.

## I.      Background Facts and Proceedings

D.H., father, and K.K., mother, are the biological parents of S.H., born in 2016. The family came to the attention of the Iowa Department of Human Services (DHS) when the child tested positive for marijuana at birth. On June 21, 2016, the juvenile court entered a custody order for the child to be placed with the father under the protective supervision of DHS after determining the mother had significant untreated mental health issues. Following the custody order, the mother was the subject of an involuntary, mental-health commitment and participated in in-patient mental-health treatment. In September, the child was adjudicated a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(n) (2016).

During the CINA action, the juvenile court found reasonable efforts were offered to the mother to work towards reunification. The permanency plan adopted by the juvenile court required the mother to participate in recommended mental health treatment, including oral medication and injections, and participate in Family Safety, Risk, and Permanency (FSRP) services. The juvenile court granted the mother partial care and custody under the direction of DHS in February 2017.

On May 4, a probation officer for the father conducted an unannounced home visit and reported the mother had been smoking marijuana and there was

marijuana in the home. The father voluntarily placed the child in a foster home with an acquaintance and contacted DHS to report the incident. DHS also discovered the mother had failed to take her medications for several weeks. The mother fled the residence she shared with the father, leaving the child behind.

On May 17, the juvenile court continued placement of the child in the foster home under the care and custody of DHS. Any visitation between the mother and the child was at the discretion of DHS. The juvenile court further ordered the mother must participate in a substance-abuse evaluation, random drug testing, and remain active in all recommended mental-health treatment, including taking all medications as prescribed. The juvenile court found reasonable efforts were being made to prevent or eliminate the need of the removal of the child from the child's home. The court found these reasonable efforts included substance-abuse and mental-health treatment for the parents.

A review hearing was held in August 2017. The juvenile court continued the prior orders and ordered additional services, including FSRP services, a substance-abuse evaluation, and random drug testing for the mother in an attempt to facilitate the reunification of mother and child.[1] The juvenile court again found reasonable efforts were being made. The mother had been hospitalized for mental-health treatment and was discharged twelve different times between February 2017 and February 2018 for failing to comply with rules and expectations regarding treatment.

---

[1] The father died during the pendency of the CINA proceeding.

The juvenile court found the mother had been hospitalized in various mental health facilities for seven of the eleven months since the child had been removed. The court also found the mother evidenced an unwillingness to address her mental health and improvement could not be anticipated for the reasonable future. The court terminated the mother's parental rights under Iowa Code sections 232.116(1)(g), (h), and (k) (2017). The mother appeals.

## II. Standard of Review

We review proceedings terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

## III. Reasonable Efforts

The mother does not dispute the statutory grounds for terminating her parental rights and, therefore, we do not address them. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). The mother claims the State failed to make reasonable efforts to facilitate reunification. She faults the care of mental-health professionals and the circumstances surrounding her medical treatment as limiting factors in her ability to communicate with the child. The mother claims the State failed to afford reasonable efforts to ensure adequate opportunities to maintain her parental relationship with the child as she underwent treatment.

For custody of a child to be transferred, a juvenile court must find by clear and convincing evidence, "[T]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available." Iowa Code § 232.102(6)(a)(2). Once custody

of a child is transferred to DHS, Iowa Code section 232.99(3) requires the court to inquire as to the sufficiency of services being provided by DHS and "whether additional services are required to facilitate the safe return of the child to the child's home." The State must make reasonable efforts to reunify the family as quickly as possible consistent with the best interests of the child. Iowa Code § 232.102(9). In determining whether the State has made reasonable efforts, the court is required to look to the type, duration, and intensity of support provided to facilitate the reunification of the child and family. Iowa Code § 232.102(12)(a)(1).

The State claims the mother failed to preserve error on the reasonable-efforts challenge. A parent must inform the juvenile court if they are not satisfied with the efforts of the State. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). If a parent fails to request other services, the issue is waived and may not be challenged at the termination proceeding. *Id.*

During the CINA case, the juvenile court held multiple review hearings, including: June 29, September 19, and November 21, 2016, and February 20, May 17, and August 28, 2017. The juvenile court followed each hearing with an order reminding the parties failure to identify a deficiency in service or request additional service may waive any challenge to the sufficiency of the services in a future termination proceeding. *See* Iowa Code § 232.99(3). No evidence in the record shows the mother expressed any dissatisfaction with the case permanency plan or the efforts of DHS at facilitating reunification. The mother's failure to request additional or alternative services during the two years of CINA and termination proceedings waived any challenges to the sufficiency of the DHS efforts at reunification.

## IV.    Competency

The mother also claims her hospitalization and mental illness kept her from competently assisting counsel and inhibited preparation for the termination proceedings.  A party to a civil action who is confined to any "reformatory or state hospital for the mentally ill" must be represented by a guardian ad litem unless defended by legal representation.  Iowa R. Civ. P. 1.211; *accord Garcia v. Wibholm*, 461 N.W.2d 166, 169–70 (Iowa 1990).  Any judgment entered against an incompetent person, without appointing a guardian ad litem, is voidable if the person was actually represented by an attorney.[2]  *In re Marriage of Payne*, 341 N.W.2d 772, 775 (Iowa 1983) (analyzing what is now Iowa Rules of Civil Procedure 1.211).

The mother was appointed counsel for the termination proceedings as required by Iowa Code section 232.113.  Juvenile proceedings are required to conform to fair treatment.  *In re M.L.*, 868 N.W.2d 456, 460 (Iowa Ct. App. 2015).

During the termination hearing, counsel for the mother raised the issue of her competency:

> COUNSEL: Your Honor, I have—I would like to make a record with regard, first of all, to [K.K.'s] current condition.
> She is adjudicated . . . . in a court committal. . . .
> And I'd like the record to reflect that—that she is there—here under that committal order.
> And I think that brings into question to some extent her ability to process the—this proceeding.
> I want the Court . . . to be aware of that, which I'm sure you are, and that the record to reflect that she has that, um, adjudicated mental illness that she continues to suffer from.

---

[2] Competency is determined by "whether a person possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged" and not solely on whether the person is receiving mental-health treatment.  Iowa Code § 229.27(2).

. . . .

COURT: Okay.  Well, again, being diagnosed with a mental illness does not mean that she's not competent.    Are you indicating that she's not competent?

COUNSEL: I'm not indicating that, Your Honor.

COURT: Okay.

COUNSEL: Not at this time.

COURT: Is she currently under any kind of medication that makes it difficult for her to be here?

COUNSEL: It is my understanding that she is court ordered to take her medication.  That she may not have been taking it on a regular basis.

COURT: Okay.  You've had a chance to meet with her today?

COUNSEL: I have.

COURT: And has she been able to follow your conversation?

COUNSEL: For the most part, yes.  Yes, I would say so.

COURT: Okay.

In the colloquy, the court inquired into the mother's awareness of the hearing as well as her competency.  The mother now claims she was unable to assist counsel in preparing for the hearing or actively participate in the hearing because of her mental illness.  The mother's argument is in direct contrast to the court's inquiry at the termination hearing and counsel's confirmation she was competent to understand and participate in the proceedings.

Even if we were to find the mother was unable to assist counsel in preparation, failure to halt the proceedings and appoint a guardian ad litem during the termination proceeding was not fatal to the legal effect of the proceeding.  *See In re T.C.*, 492 N.W.2d 425, 429 (Iowa 1992).  The appointment of a guardian ad litem is intended to serve as a "vicarious presence" for a party to the proceedings who is not able to present a defense.  *In re McGonigle*, 533 N.W.2d 524, 525 (Iowa 1995).  An attorney appearing for a party suffering from mental illness is sufficient representation to defend the party's interest unless the court finds it necessary to

supersede the attorney. *Payne*, 341 N.W.2d at 775 (analyzing what is now Iowa Rules of Civil Procedure 1.211).

There was no reason for the juvenile court to supersede the mother's counsel. Counsel cross-examined the State's witness during the termination hearing, provided closing arguments in support of maintaining the mother's parental rights, and served as a representative of her legal interests. Counsel fulfilled the duties of a guardian ad litem under similar circumstances. *See Wibholm*, 461 N.W.2d at 170 ("Simply put, the guardian ad litem must do whatever the circumstances of the particular case dictate [are] necessary to protect the ward's interest."). The juvenile court was under no obligation to further delay the termination hearing to appoint a guardian ad litem when counsel was already fulfilling the necessary duties. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (finding a child's long-term best interest requires the termination proceedings must be viewed with a sense of urgency).

## V. Additional Time

The mother also claims the termination of her parental rights should have been stayed and a guardianship for the child put in place to provide an opportunity for her to recover from her mental illness. The mother further claims she, when stable, nurtures and cares for the child, and a natural bond exists between the mother and child which would be damaged by termination.

Iowa Code section 232.104(2)(b) allows the parent to be granted an extension to work toward reunification if the juvenile court determines the need for removal will no longer exist at the end of the extension. Other permanency options include creation of a guardianship or transfer of custody for long-term care if the

court determines convincing evidence shows termination of the parent-child relationship is not in the child's best interest. Iowa Code § 232.104(2)(d); *In re B.A.*, No. 17-1455, 2017 WL 6514000, at *2 (Iowa Ct. App. Dec. 20, 2017).

The child had been out of the mother's direct care for eleven months at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(3). Further, the mother has been placed in residential health treatment fifteen times since the child's birth. The juvenile court took special notice the mental-health treatment for the mother has become more restrictive in recent months because of her continuing refusal to take her medications. The court also noted the young and vulnerable age of the child and the immediate need for placement in a permanent, stable home to promote the child's health and wellness. *See C.B.*, 611 N.W.2d at 495 (highlighting the urgency needed in termination proceedings to best meet the child's long-term interests and needs).

We find the court's termination of the mother's parental rights was in the child's best interest. The mother has had minimal direct contact with the child for more than half of the child's life. Further, no evidence was presented suggesting imminent improvement in the mother's mental-health status which would justify delaying the placement of the child. The mother has squandered opportunities to actively participate in medical treatment to improve her mental health while working toward reunification. The mother has also consistently impeded any reunion by refusing to take her medication and abide by the conditions set forth by the juvenile court. Because we find clear and convincing evidence exists showing termination of the parent-child relationship is in the child's best interest, an extension or guardianship would not be appropriate.

**VI.    CONCLUSION**

We find the mother waived her claim the State failed to provide reasonable efforts by not raising the issue prior to the termination hearing.  We also find the mother's interests were advocated through the presence of counsel and termination of the mother's parental rights is in the best interests of the child.

**AFFIRMED.**