# IN THE COURT OF APPEALS OF IOWA

No. 18-0943
Filed August 1, 2018

**IN THE INTEREST OF K.K., K.K., and R.K.,**
**Minor Children,**

**N.K., Father,**
          Appellant,

**K.M., Mother,**
          Appellant.
_____

          Appeal from the Iowa District Court for Crawford County, Mary L. McCollum

Timko, Associate Juvenile Judge.


          Mother and father appeal from the order terminating their parental rights

pursuant to Iowa Code chapter 232 (2018). **AFFIRMED ON BOTH APPEALS.**


          George C. Blazek of Franck, Sextro & Blazek, P.L.C., Denison, for appellant

father.

          Kara L. Minnihan of Minnihan Law Firm, Onawa, for appellant mother.

          Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

          Martha A. Sibbel of Law Office of Martha Sibbel, P.L.C., Carroll, guardian

ad litem for minor child.


          Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Parents Nicholas and Kimberly appeal from a juvenile court order terminating their parental rights pursuant to Iowa Code section 232.116 (2018). The parents have one child in common. Nicholas is the father of R.K. (born 2009), K.K. (born 2013), and K.K. (born 2015). His rights to the children were terminated pursuant to Iowa Code section 232.116(1)(e) and (*l*), as to all three children, and (h), as to the youngest child. Kimberly is the mother of R.K. Her parental rights in R.K. were terminated pursuant to Iowa Code section 232.116(1)(g) and (*l*). The juvenile court also terminated the parental rights of the mother of K.K. and K.K., but she does not appeal.

I.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established and need not be repeated herein. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (setting forth the statutory framework). Where, as here, "the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

II.

By way of background, this family has been involved with the Iowa Department of Human Services (IDHS) for over six years. Kimberly had her rights to three other children terminated in March 2015 due to her use of methamphetamine and criminal activity. In the same proceeding, a permanency order placed custody of R.K. with Nicholas.

This most recent case stems from several incidents occurring in March 2017. On March 1, 2017, Kimberly tested positive for methamphetamine. Prior to this time, Nicholas permitted unsupervised contact between Kimberly and R.K. In mid-March, a search of Nicholas and his girlfriend's home revealed drug paraphernalia and stolen property. Nicholas was arrested. IDHS then began an investigation into allegations Nicholas and his girlfriend were using methamphetamine and marijuana around the children. After Nicholas and his girlfriend both admitted to using methamphetamine and being under the influence of the drug while caring for R.K., K.K., and K.K., the children were removed from their care.

Nicholas made little progress over the life of this case. He was diagnosed with methamphetamine-use disorder and cannabis-use disorder. The case plan directed him to obtain substance-abuse treatment and attain sobriety. He did not do so. Over the life of the case, Nicholas tested positive for methamphetamine, amphetamine, or some combination thereof at least eight times. He completed an inpatient treatment program after the State petitioned to terminate his parental rights but relapsed almost immediately. Nicholas was directed to obtain mental-health services and participate in anger-management classes. The classes were necessary due to Nicholas's violent outbursts, most notably threats to decapitate his mother and shoot Kimberly. As of the termination hearing in April 2018, Nicholas was not attending mental-health appointments, had not completed anger-management classes, was sporadic in his attendance at outpatient substance-abuse treatment, and blamed others and outside contamination for his recent positive drug tests.

In contrast, initially, Kimberly showed more promise. She engaged in inpatient substance-abuse treatment. After inpatient treatment, she sought outpatient services, obtained an apartment, and found employment. Kimberly maintained custody of her younger children, and R.K. was placed in her care.

After showing positive signs, Kimberly relapsed in January 2018. She used methamphetamine several times over a multiple-day period. R.K. and her other children were removed from her care. Kimberly was placed in the county jail and then a residential treatment facility for parole violations. At the time of intake into the residential treatment facility on February 7, 2018, Kimberly tested positive for methamphetamine.

At the termination hearing, Kimberly requested additional time to reunite with her child. Kimberly testified she had been sober for ten months prior to her relapse and could again attain sobriety. In the prior termination case involving her older children, she was sober for two years prior to relapse. Kimberly testified this time would be different because she would break up with her boyfriend, who she said was a bad influence on her. Her testimony lacked credibility. At the time of the termination hearing, she was pregnant with his child, which would make compliance with her promise of no future contact difficult at best. In addition, she admitted on cross-examination she had broken up with him on four prior occasions. Kimberly testified that she would seek further substance-abuse treatment and comply with all IDHS services. Her caseworker expressed skepticism given Kimberly's long history of treatment, sobriety, and relapse.

Ultimately, the juvenile court terminated the parental rights of Kimberly in R.K. and Nicholas in all three children. Both parents now appeal.

III.

A.

We first address the claims raised by Nicholas. He contends the State failed to prove the statutory grounds authorizing the termination of his parental rights. Specifically, he argues the State failed to prove "that the father relapsed on methamphetamines" after December 2017 and thus failed to prove the grounds for termination of parental rights under subsection (*l*). We disagree.

Iowa Code section 232.116(1)(*l*) states the court may terminate parental rights when:

> (1)     The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2)     The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3)     There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

A "substance-related disorder" is defined as "a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual of mental disorders published by the American psychiatric association that results in a functional impairment." Iowa Code § 125.2(14).

On our de novo review of the record, we find clear and convincing evidence to satisfy these elements. Nicholas began using marijuana at age thirteen and methamphetamine at age nineteen. At the time of the termination hearing, he was twenty-eight and had been struggling with addiction for years. He also had been diagnosed with substance-use disorders on at least two separate occasions. *See*

*In re G.C.*, No. 17-1758, 2018 WL 540873, at *1 (Iowa Ct. App. Jan. 24, 2018) (finding a severe substance-related disorder based on history of usage and diagnosis). Nicholas presents a danger to himself or others. Nicholas admitted he used methamphetamine while caring for his children. The district court also pointed out that his use of methamphetamine has prevented him from meeting his own basic needs and those of his children. In addition, Nicholas threatened to decapitate his mother and shoot Kimberly. There is clear and convincing evidence that the children could not be returned to Nicholas within a reasonable period of time. "[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App.1998). Nicholas's history is not promising. The caseworker aptly noted the lack of follow through, "currently and historically, they're still not following through with the specific guidelines set out for them . . . I don't think with more time that there would be improvements made." All three children have suffered as a result of this instability and uncertainty and deserve permanency. To borrow from the juvenile court, "the court concludes it would be in [the children's] best interest to terminate the parent-child relationship so that they will have the opportunity to grow and mature in a safe, healthy, and stimulating environment. Enough is enough."

Nicholas also requests he be given an additional six months' time to resume care of his children. Pursuant to Iowa Code section 232.104(2)(b), the court may enter an order deferring permanency for six months upon a finding the need for the child's removal will no longer exist at the end of the additional six-month period.

The court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination" the need for removal will no longer exist at the end the extension. Iowa Code § 232.104(2)(b). "The court may look at a parent's past performance" in determining if such a deferral is appropriate. *In re T.D.H.*, 344 N.W.2d 268, 269 (Iowa Ct. App. 1983). "The judge considering [deferred permanency] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting *In re A.C.*, 415 N.W.2d 609, 613–14 (Iowa 1987)). More time is not the solution. There is no basis for this court to conclude removal would no longer be necessary at the end of an additional six-month period. Nicholas has a long history of drug use, unsuccessful treatment, non-compliance, and displaying a lack of motivation to change. "Children simply cannot wait for responsible parenting." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

B.

We now turn to Kimberly's arguments on appeal. She contends the evidence supporting the grounds for termination is insufficient, requests six months of deferred permanency, and contends termination is not in the best interest of R.K.

We address the sufficiency of the evidence supporting the grounds for termination set forth in Iowa Code section 232.116(1)(g). Pursuant to this provision, the juvenile court may terminate a parent's rights upon clear and convincing evidence of the following:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.

(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

On de novo review, we conclude there is clear and convincing evidence supporting termination of Kimberly's parental rights. It is undisputed R.K. has been adjudicated a child in need of assistance. It is also undisputed Kimberly's parental rights have been terminated with respect to other children in the family. There is clear evidence an additional period of services would not correct the situation. Kimberly has been involved with IDHS for six years. Although Kimberly has shown progress on occasions, her progress is ephemeral and not enduring. In the termination case involving her older children, Kimberly was sober but relapsed. In this case, she was sober but relapsed. In the past, she repeatedly stated she would cease her relationship with her troublesome boyfriend but failed to do so. In this case, she stated she would cease her relationship with her troublesome boyfriend but became pregnant with his child. This court has affirmed the termination of parental rights under Iowa Code section 232.116(1)(g) under similar circumstances. *See In re A.H.*, No. 16-0691, 2016 WL 4379355, at *2 (Iowa Ct. App. Aug. 17, 2016) (finding termination appropriate under section 232.116(1)(g) where parent had substance-abuse dependence and repeatedly relapsed after periods of sobriety); *see also In re B.C.*, No. 17-0933, 2017 WL 4050975, at *1

(Iowa Ct. App. Sept. 13, 2017) (affirming termination under 232.116(1)(g) where mother had history of drug abuse and limited success with treatment and other services); *In re K.F.*, No. 14-0892, 2014 WL 4635463, at *3 (Iowa Ct. App. Sept. 17, 2014) (finding termination appropriate, where as here, "[a]lthough [the mother] has been involved with services concerning her children at least three times, she does not obtain any lasting benefit from those services"). As in the cited cases, we conclude the evidence is sufficient in this case.

Kimberly also requests six months of deferred permanency. As with Nicholas, we look to her "past performance" to determine the likelihood that the need for removal will no longer exist at the end the extension. *See T.D.H.*, 344 N.W.2d at 269. While Kimberly has had periods of sobriety, she continues to engage in the cyclical pattern of addiction, rehabilitation, and relapse. Her past conduct leads us to conclude an additional six months of deferred permanency is not appropriate in this case.

Finally, Kimberly briefly contends termination of her parental rights is not in the best interest of R.K. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 776 (quoting *P.L.*, 778 N.W.2d at 41). R.K. has suffered through years of her mother's instability,

poor choices, and drug addiction. Any harm to R.K. is vastly outweighed by the long and short-term benefits of a loving, stable, permanent home.

IV.

For these reasons, we affirm the juvenile court order terminating the parental rights of Nicholas and Kimberly pursuant to Iowa Code chapter 232.

**AFFIRMED ON BOTH APPEALS.**